UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JENZABAR, INC.,
                Plaintiff,

v.

DYNAMIC CAMPUS SOLUTIONS, INC.,
MICHAEL L. GLUBKE, and
DOROTHY HESS,
                Defendants.

Civil Action No.  1:07-cv-11219

## COMPLAINT

Plaintiff Jenzabar, Inc. ("Jenzabar") brings this action against defendants Dynamic Campus Solutions, Inc. (formerly known as Dynamic Campus Solutions LLC) ("DCS"), Michael L. Glubke ("Glubke"), and Dorothy Hess ("Hess").  Glubke and Hess (the "Individual Defendants") worked for Jenzabar and/or its predecessor in interest, CARS Information Systems Corporation.  In violation of their obligations, they formed DCS specifically intending to trade off the confidential information they had obtained during their prior employment.  Since establishing DCS, they have done so, in violation of Jenzabar's rights and their obligations, and in many cases, in violation of express contractual agreements.  In addition, the defendants have been offering software that infringes Jenzabar's registered copyright in its software, using confidential information they obtained from Jenzabar about Jenzabar's customers in conjunction with infringing software to directly and unlawfully compete with Jenzabar.  Jenzabar now brings this action to recover damages that it has sustained as a result of the conduct of DCS and the Individual Defendants, and to obtain injunctive relief against future breaches and infringement.

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Jenzabar, Inc. is a corporation duly organized under the laws of Delaware, with a principal place of business at 800 Boylston Street, 35th Floor, Boston, Suffolk County, Massachusetts 02199.

2. Defendant Dynamic Campus Solutions, Inc. ("DCS"), which during the relevant time period was known as Dynamic Campus Solutions LLC, is a corporation with a principal place of business at 735 Primera Blvd., Suite 120, Lake Mary, Florida 32746. Dynamic Campus Solutions, Inc. is, upon information and belief, comprised of most of the same key individuals and is liable for the wrongdoing of Dynamic Campus Solutions LLC.

3. Michael L. Glubke is an individual who was last known to the plaintiffs to reside at 28371 El Sur, Laguna Niguel, CA 92677.

4. Dorothy Hess is an individual who, upon information and belief, resides at 1042 Butte Street, Claremont, CA 91711.

5. This Court has subject matter jurisdiction over the defendants pursuant to 28 U.S.C. §§ 1331, 1332, 1338, and 1367, as this complaint contains counts arising under the laws of the United States, is between citizens of different states with an amount in controversy in excess of $75,000, contains counts relating to unfair competition, and contains counts over which the Court has supplemental jurisdiction.

6. This Court has personal jurisdiction over the defendants pursuant to M.G.L. c. 223A, § 3.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

**FACTUAL ALLEGATIONS**

Jenzabar's Acquisition Of CARS

8.        Jenzabar is a leading provider of enterprise software and solutions to institutions of higher education.  Jenzabar's products include Web-based enterprise software with student, institutional advancement, human resources, and financial applications; e-learning solutions; and an enterprise information portal.  By using Jenzabar's technology and software, an institution can conduct virtually all of its business, including admissions, financial aid, course registration, course development, e-learning, and alumni fundraising.  CARS is an indirect subsidiary of Jenzabar that owns the copyright to the Jenzabar CX software.

9.        Prior to March 2000, Glubke was Vice President of Sales & Marketing of CARS Information Systems Corporation ("CARS"), a company that developed and supported administrative computer systems for educational institutions.

10.       In or about March 2000, Jenzabar purchased all of the stock of CARS.

11.       Shortly thereafter, Glubke was promoted to Vice President of Sales and Marketing of Jenzabar, Inc., a company much larger than CARS.

12.       After the acquisition, CARS first operated as a division of Jenzabar, but later was merged into it.

Glubke's Wrongful Conduct While Employed By Jenzabar/CARS

13.       As Vice President of Sales & Marketing of CARS and then Jenzabar, Glubke acquired a thorough knowledge of the products, the sales strategies and practices, the pricing, the technology, the customer information and other trade secrets of CARS and then Jenzabar.

14.       In addition, as an employee of Jenzabar and member of its management, Glubke owed fiduciary duties to Jenzabar, including duties of utmost loyalty.

15. But Glubke flouted his duties, and, while still employed by Jenzabar, committed numerous wrongful acts.

16. For example, Glubke purported to release at least two employees from the terms of each's non-competition and non-disclosure agreements with Jenzabar, despite the fact that he had no authority to do so. This unauthorized action has caused substantial competitive harm to Jenzabar.

17. Glubke failed to disclose and affirmatively misrepresented the employment status of another Jenzabar employee, Jody Skjerven, while she interviewed for and ultimately accepted a position with SCT Corporation, one of Jenzabar's primary competitors.

18. Glubke communicated with third parties in an attempt to undermine Jenzabar's business objectives and opportunities.

19. Glubke made disparaging comments regarding Jenzabar's management to third parties.

20. Glubke resigned from Jenzabar on or about May 15, 2002, without providing the requisite notice required by, and thus in breach of, his contract.

<u>The Formation Of DCS And Liability Of
The Individual Defendants For The Wrongful Conduct Of DCS</u>

21. After resigning from Jenzabar, Glubke formed DCS with the deliberate intent to profit from the confidential information that he and Hess had acquired in the course of each's employment with Jenzabar/CARS.

22. Defendant Dorothy Hess is another former CARS and Jenzabar employee who was bound by a Confidentiality, Non-Competition, Non-Solicitation and Invention Agreement that precludes her, for a period of two years following the termination of her employment from Jenzabar, from, among other things: "(1) directly or indirectly owning, managing, operating, controlling, being employed by . . . any business, venture or activity that competes with or

provides similar services" to Jenzabar; (2) soliciting Jenzabar employees; and (3) contacting Jenzabar customers. This agreement also contains an unlimited confidentiality provision that precludes Hess from disclosing "any confidential information relating to Jenzabar's business or prospects."

23. Despite Hess' obligation not to compete with Jenzabar, upon information and belief, she worked for DCS as a Senior Consultant, has used Jenzabar's confidential information, and has been directly involved in the solicitation of Jenzabar customers.

24. DCS is engaged in direct competition with Jenzabar, and has made targeted appeals to Jenzabar customers touting its experience in a fashion that directly trades off of the confidential information that the Individual Defendants gained while they were employed by Jenzabar and its subsidiaries.

25. Glubke has constituted and positioned DCS in a conscious effort to compete with Jenzabar unfairly and trade off Jenzabar's confidential information. The Individual Defendants are thus personally responsible for DCS' violation of Jenzabar's rights, in addition to their own wrongful conduct.

### The Wrongful Acts Of DCS And The Individual Defendants

26. DCS has sent at least one letter to a Jenzabar customer, signed by Glubke and Hess, in which DCS refer directly to Jenzabar's POISE (now PX) system and appears to offer consulting services relating to the customer's use and license of Jenzabar's POISE (PX) software system.

27. The letter is not only factually inaccurate, but also it intentionally trades on the confidential information that the Individual Defendants acquired while employed by Jenzabar and its subsidiaries. Upon information and belief, DCS has similarly targeted other Jenzabar customers.

28. DCS has also sold products to one or more Jenzabar customers under circumstances in which it could not have developed and/or sold those products had it not been for the confidential information that the Individual Defendants obtained in the course of their employment with Jenzabar and CARS.

29. DCS has used confidential information obtained by the Individual Defendants to interfere with contractual and prospective contractual relations with Jenzabar customers. DCS has also interfered with contractual and prospective contractual relations with Jenzabar customers by other means.

30. DCS' web site also contains misrepresentations. Among other things, it lists representative clients that are actually clients of Jenzabar and, on information and belief, not clients of DCS.

31. DCS personnel have contacted Jenzabar's third-party vendors and suppliers in an effort to interfere with Jenzabar's relationships with those entities and to ascertain sensitive and proprietary commercial information.

32. DCS personnel have also contacted Jenzabar's employees in an effort to interfere with Jenzabar's relationships with those employees by offering such employees employment with DCS, and to ascertain sensitive and proprietary commercial information, in violation of their nondisclosure obligations.

33. In October 2002, Glubke approached Jenzabar about the possibility of entering into a private label arrangement whereby Glubke would change the graphic user interface on Jenzabar's CX product and sell it to institutions.

34. Upon information and belief, when Glubke did not receive Jenzabar's permission, he chose to go forward with that plan without authorization.

35. Jenzabar owns a valid copyright in the Jenzabar CX software, which has been duly registered with the U.S. Copyright Office ("the Copyright").

36. DCS has offered and is currently offering software products that infringe Jenzabar's Copyright.

37. For instance, DCS' products utilize the structure, sequence, and organization of the databases in the Jenzabar's CX product.

38. Upon information and belief, DCS has also directly copied the source code of the Jenzabar CX product.

39. In fact, it is extraordinarily unlikely that DCS could have written and developed the software programs listed on its website without having access to the Jenzabar CX software. Accordingly, upon information and belief, DCS has wrongfully and without authorization obtained a copy of, or access to a copy of, the copyrighted Jenzabar CX software.

40. The Individual Defendants are using confidential information they obtained from Jenzabar about Jenzabar's customers in conjunction with copied Jenzabar software to directly and unlawfully compete with Jenzabar.

41. In short, DCS' copyright infringement is knowing and willful.

### COUNT I: VIOLATION OF LANHAM ACT § 43(a), 15 U.S.C. § 1125(a)
### Unfair Competition and False Advertising
### (All Defendants)

42. The plaintiffs restate and re-allege all of the allegations contained in Paragraphs 1 through 41 as if fully set forth herein.

43. As described above, the defendants' wrongful conduct includes (but is not limited to) the making of affirmative misrepresentations regarding their own experience and the clients and experience of DCS. The defendants' misrepresentations constitute false advertising and/or

unfair competition in violation of § 43(a) of the Lanham Trademark Act, set forth at 15 U.S.C. § 1125(a).

44. The defendants' misrepresentations were made or distributed in interstate commerce in connection with commercial advertising or promotion.

45. The defendants' misrepresentations are likely to confuse or deceive an appreciable number of consumers, materially influencing their purchasing decisions.

46. The defendants' misrepresentations are likely to continue unless restrained and enjoined.

47. The defendants' misrepresentations are likely to cause injury to the consuming public and/or Jenzabar.

48. As a result of the defendants' misrepresentations, Jenzabar has suffered and will continue to suffer damage and losses, including but not limited to, irreparable injury to its business reputation and goodwill. Jenzabar is entitled to injunctive relief and to an order compelling the impounding of false advertising and providing corrective advertising.

49. As a result of the defendants' conduct, Jenzabar has sustained substantial damages.

## COUNT II: COPYRIGHT INFRINGEMENT (All Defendants)

50. The plaintiffs restate and re-allege all of the allegations contained in Paragraphs 1 through 49 as if fully set forth herein.

51. Jenzabar holds a valid copyright for the Jenzabar CX product that has been duly and properly registered with the United States Copyright Office.

52. The defendants have infringed the Copyright by distributing infringing materials in the United States of America without approval or authorization from Jenzabar.

53. The defendants' conduct has been willful within the meaning of the Copyright Act. At a minimum, each defendant acted with willful blindness to and in reckless disregard of Jenzabar's copyright.

54. As a result of their wrongful conduct, the defendants are liable to Jenzabar for copyright infringement under 17 U.S.C. § 501.

55. Jenzabar has suffered, and will continue to suffer, substantial losses, including but not limited to damage to its business reputation and goodwill. It is entitled to recover damages, which include its losses and any and all profits the defendants may have made as a result of their wrongful conduct. 17 U.S.C. § 504. Alternatively, Jenzabar is entitled to statutory damages under 17 U.S.C. § 504(c).

56. In addition, because the defendants' infringement has been willful, the award of statutory damages should be enhanced in accordance with 17 U.S.C. § 504(c)(2).

57. Jenzabar is also entitled to injunctive relief pursuant to 17 U.S.C. § 502 and to an order impounding any and all infringing materials pursuant to 17 U.S.C. § 503. Jenzabar has no adequate remedy at law for the defendants' wrongful conduct because, among other things, (a) Jenzabar's copyrights are unique and valuable property which have no readily determinable market value, (b) the defendants' infringement harms Jenzabar's business reputation and goodwill such that Jenzabar could not be made whole by any monetary award, and (c) the defendants' wrongful conduct, and the resulting damage to Jenzabar, is continuing. Jenzabar is also entitled to recover its attorneys' fees and costs of suit. 17 U.S.C. § 505.

### COUNT III: BREACH OF CONTRACT (The Individual Defendants)

58. The plaintiffs restate and re-allege all of the allegations contained in Paragraphs 1 through 57 as if fully set forth herein.

59. Jenzabar has valid and enforceable contracts with Glubke and Hess that are clear and definite in all of their material terms.

60. Jenzabar has fully performed its obligations under the contracts.

61. Glubke and Hess have materially breached the terms of these contracts.

62. Jenzabar has been damaged as a result of these breaches.

63. In addition to an award of damages, Jenzabar is entitled to an order enjoining Hess from any further violations of their contracts.

### COUNT IV: BREACH OF DUTY (The Individual Defendants)

64. The plaintiffs restate and re-allege all of the allegations contained in Paragraphs 1 through 63 as if fully set forth herein.

65. By virtue of their employment with Jenzabar, the Individual Defendants owed duties of loyalty including fiduciary duties to Jenzabar.

66. As described herein, the Individual Defendants breached their duties to Jenzabar by, among other things, disclosing confidential information to third parties.

67. As a result of the Individual Defendants' breaches of their duties, Jenzabar has sustained substantial damages.

### COUNT V: INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS (All Defendants)

68. The plaintiffs restate and re-allege all of the allegations contained in Paragraphs 1 through 67 as if fully set forth herein.

69. As described above, the defendants have knowingly and intentionally interfered with Jenzabar's contractual relationships with its customers, vendors, and employees.

70. The defendants' interference was been improper in motive and/or means.

71. As a result of the defendants' conduct, Jenzabar has sustained substantial damages.

### COUNT VI: UNFAIR AND DECEPTIVE TRADE PRACTICES IN VIOLATION OF M.G.L. c. 93A, § 11 (DCS)

72. The plaintiffs restate and re-allege all of the allegations contained in Paragraphs 1 through 77 as if fully set forth herein.

73. At all times relevant to this Complaint, both DCS and Jenzabar were engaged in trade or commerce within the meaning of M.G.L. c. 93A, §§ 2 and 11.

74. DCS' unfair or deceptive acts or practices occurred primarily and substantially within the Commonwealth of Massachusetts for the purposes of M.G.L. c. 93A, § 11, because, among other things, the harm resulting to Jenzabar was suffered in Massachusetts where Jenzabar is located, and because DCS has sent false and deceptive advertising to customers and potential customers of Jenzabar within the Commonwealth.

75. DCS committed unfair or deceptive acts or practices within the meaning of M.G.L. c. 93A, §§ 2 and 11 by the conduct alleged above.

76. DCS' unfair or deceptive acts or practices, as described above, were willful or knowing within the meaning of M.G.L. c. 93A, §§ 2 and 11.

77. As a result of the DCS' conduct, Jenzabar has sustained substantial damages.

### REQUEST FOR RELIEF

WHEREFORE, Jenzabar respectfully prays that the Court:

1. Enter judgment for Jenzabar and against each defendant named in each count above;

2. Enter an order temporarily and permanently enjoining the defendants, their officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with the defendants, from:

    a. further solicitation of Jenzabar customers, employees, and vendors and interference with Jenzabar's contractual relationships with its customers, employees, and vendors, whether directly or indirectly;

    b.  offering products and services that compete with Jenzabar's products and services or that infringe any of Jenzabar's copyrights or other intellectual property;

    c.  using or disclosing any of Jenzabar's confidential information;

    d.  infringing Jenzabar's copyrights;

    e.  making reference on DCS' web site or in its advertising to Jenzabar customers and former customers, and making reference to Jenzabar with the exception of a single, prominently posted disclaimer on the main page of the web site making clear that DCS is not affiliated with or sponsored by Jenzabar and providing a link to Jenzabar's web site at www.jenzabar.net; and

    f.  further violating Jenzabar's rights.

3.  Award Jenzabar damages against each of the defendants in an amount to be determined at trial;

4.  Award Jenzabar attorneys' fees, costs, interest, and enhanced, special, statutory and/or punitive damages to the fullest extent allowed by law; and

5.  Grant Jenzabar such other and further relief as this Court may deem just and proper.

JENZABAR, INC.,

By their attorneys,

HOLLAND & KNIGHT LLP


*/s/Edward J. Naughton*
Edward J. Naughton (BBO #600059)
10 St. James Avenue
Boston, Massachusetts 02116
(617) 523-2700
edward.naughton@hklaw.com


Dated:    July 2, 2007
             Boston, Massachusetts