UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | | |
|---|---|---|
| JENZABAR, INC., | ) | CIVIL ACTION NO. 1:07-cv-11219 (JLT) |
| Plaintiff, | ) | |
| | ) | (David M. Felper, BBO# 162460) |
| v. | ) | (Christine S. Collins, BBO# 639293) |
| | ) | |
| DYNAMIC CAMPUS SOLUTIONS, INC., | ) | |
| MICHAEL L. GLUBKE, and DOROTHY | ) | |
| HESS, | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT DYNAMIC CAMPUS SOLUTIONS, INC. AND MICHAEL L. GLUBKE'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Defendants Dynamic Campus Solutions, Inc. ("DCS") and Michael L. Glubke

("Glubke") submit this memorandum in support of their Motion to Dismiss for Failure to State a

Claim pursuant to Fed. R. Civ. P. 12(b)(6) based on Plaintiff's breach of the terms of the parties'

amended tolling agreement.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff Jenzabar, Inc. ("Jenzabar") is a leading provider of enterprise software and

solutions to institutions of higher education. (Plaintiff's Complaint ("Complaint"), ¶ 9.) DCS,

which was co-founded by Glubke and Richard W. Middaugh in October 2002, is a value-added

reseller of third-party software packages and solutions to higher education customers; DCS does

not design or produce any software. (Glubke Aff., ¶ 2.) DCS also offers consulting services to

higher education institutions, including advice and negotiation assistance on bids submitted by

third-party software providers (e.g., Jenzabar). (Id.)

---

[1]     The facts set forth herein are based on the Plaintiff's Complaint ("Complaint") and the Affidavits of Michael L. Glubke ("Glubke Aff.") and David M. Felper, Esq. ("Felper Aff."), filed herewith, and attachments thereto.

Glubke was employed by CARS Information Systems Corporation ("CARS"), a company that developed and supported administrative computer systems for educational institutions, in the position of Vice President of Sales & Marketing beginning in 1997. (Glubke Aff., ¶ 3; Complaint, ¶ 9.) After Jenzabar acquired CARS in March 2000, Glubke continued working at CARS and was thereafter appointed to the position of Vice President of Sales and Marketing at Jenzabar. (Glubke Aff., ¶ 3; Complaint, ¶¶ 10-11.) In May 2002, Glubke resigned from his positions at CARS/Jenzabar. (Glubke Aff., ¶ 4; Complaint, ¶ 20.) Defendant Dorothy Hess ("Hess") was employed by Jenzabar from April 2000 to November 2001, at which time Jenzabar terminated her employment. (Glubke Aff., ¶ 5; Complaint, ¶ 22.)

In July 2003, approximately 14 months after Glubke's resignation from CARS/Jenzabar, Jenzabar and CARS filed an action in the United States District Court for the District of Massachusetts (Eastern Division) styled <u>Jenzabar, Inc. and CARS Information Solutions, Inc. v. Dynamic Campus Solutions, LLC, Michael L. Glubke, Richard W. Middaugh, and Dorothy Hess</u>, Civil Action No. 03-cv-11345 (NMG) (the "First Action"), asserting claims against DCS, Glubke, Hess, and Middaugh which are essentially identical to those asserted in the instant action against DCS, Glubke, and Hess, namely: (1) violation of the Lanham Act, § 43(a), 15 U.S.C. § 1125(a) (unfair competition and false advertising) (all Defendants); (2) copyright infringement (all Defendants); (3) breach of contract (individual Defendants); (4) breach of duty (individual Defendants); (4) intentional interference with contractual relations (all Defendants); and (5) unfair and deceptive trade practices in violation of M.G.L. c. 93A, § 11 (DCS). (Glubke Aff., ¶ 6; Felper Aff., ¶ 3.) Glubke and Middaugh asserted counterclaims against Plaintiffs for breach of contract, and breach of contract and conversion, respectively. (<u>Id.</u>)

In order to continue pursuing settlement discussions while avoiding the time and expense of litigation, as well as in the interest of judicial economy, the parties to the First Action entered into a tolling agreement on January 9, 2006 (the "Tolling Agreement") pursuant to which the parties agreed, among other things, that (1) they would dismiss the First Action without prejudice and toll any applicable time-based claims or defenses, (2) Jenzabar would provide 15 days notice prior to refiling a lawsuit against Defendants, and (3) Jenzabar would file a new lawsuit against Defendants within 12 months of the date of the Tolling Agreement; in other words, by January 9, 2007. (Felper Aff., ¶ 4, Ex. 1, ¶¶ 1-2; Glubke Aff., ¶ 7.)

On December 15, 2006, 25 days before the expiration of the Tolling Agreement, counsel for Jenzabar proposed to Glubke[2] and Attorney Felper that the parties extend the Tolling Agreement for an additional three months – to March 30, 3007 – in order to engage in further settlement discussions (the "First Amendment"). (Glubke Aff., ¶ 8, Ex. 1; Felper Aff., ¶ 5.) Jenzabar's counsel then drafted and provided Attorney Felper, on behalf of Defendants, Hess, and Middaugh, with a draft amendment to the Tolling Agreement. (Felper Aff., ¶ 5, Ex. 2.) Approximately one week later, on December 22, 2006, counsel for the remaining parties[3] executed the First Amendment which, in addition to extending the filing date of a new lawsuit to March 30, 2007, contained the same requirement as the Tolling Agreement that Jenzabar was required to provide Defendants with 15 days notice prior to filing a new lawsuit, i.e., by March 15, 2007. (Id.; Glubke Aff., ¶ 9.)

Approximately three months later, on March 12, 2007 (18 days before the expiration of the First Amendment), Jenzabar's counsel contacted Glubke and Attorney Felper to propose that

---

[2]     At the request of Glubke, counsel for Jenzabar engaged in settlement discussions directly with Glubke in order to minimize Defendants' attorney's fees. (Glubke Aff., ¶ 8.)

[3]     Middaugh and Jenzabar entered into a settlement agreement on or about December 11, 2006 dismissing their respective claims. (Glubke Aff., ¶ 9; Felper Aff., ¶ 5.)

the remaining parties extend the First Amendment for an additional three months, to June 30, 2007, because they had been unable to reach a settlement of their respective claims. (Glubke Aff., ¶ 10, Ex. 2; Felper Aff., ¶ 6.) Once again, Jenzabar's counsel drafted and provided a proposed amendment incorporating the new terms. (Id.) The remaining parties agreed to this amendment on March 19, 2007 (the "Second Amendment"). (Felper Aff., ¶ 6, Ex. 3; Glubke Aff., ¶ 10.) Pursuant to the terms of the Second Amendment, Jenzabar was bound again to provide Defendants and Hess with 15 days notice before filing a new lawsuit against them and had to file the new lawsuit by June 30, 2007. (Id.)

On Monday, June 25, 2007, just five days before the expiration of the Second Amendment and the deadline for filing its lawsuit against Defendants and Hess, Jenzabar's counsel proposed to Glubke and counsel for Defendants that the parties extend the Tolling Agreement an additional three months, to September 30, 2007. (Glubke Aff., ¶ 11, Ex. 3; Felper Aff., ¶ 7, Ex. 4.) This was the first communication to Defendants by Jenzabar or its attorneys, either oral or written, in which an extension of the Second Amendment was proposed. (Glubke Aff., ¶ 11; Felper Aff., ¶ 7.) Defendants did not agree to an extension by June 30, 2007, and on July 2, 2007, two days after the June 30, 2007 filing deadline established by the Second Amendment, Jenzabar filed the instant action (the "Second Action"). (Id.; Complaint, p. 12.) Defendants did not receive notice 15 days before either June 30, 2007 or July 2, 2007 that Jenzabar intended to file its lawsuit against them. (Glubke Aff.,¶ 11; Felper Aff., ¶ 7.) Jenzabar served its Complaint in the Second Action on Defendants on October 29, 2007. (Glubke Aff., ¶ 12.)

## ARGUMENT

In assessing Defendants' Motion to Dismiss under Rule 12(b)(6), this Court must "assume the truth of all well-pleaded facts and indulge all reasonable inferences that fit the

plaintiff's stated theory of liability." <u>Zona v. Clark University</u>, 436 F.Supp.2d 287, 289 (D.Mass. 2006), quoting <u>Redondo-Borges v. U.S. Dep't of Housing and Urban Dev.</u>, 421 F.3d 1, 5 (1st Cir. 2005). This Court should dismiss Plaintiff's Complaint if, ". . . when viewed in this manner, the pleading shows no set of facts which could entitle [P]laintiff to relief." <u>Id.</u>, citing <u>Gooley v. Mobil Oil Corp.</u>, 851 F.2d 513, 514 (1st Cir.1988). Further, this Court may adjudicate a properly raised affirmative defense under a Rule 12(b)(6) motion provided (i) the facts establishing the defense are definitively ascertainable from Plaintiff's Complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude. <u>See</u> <u>Rodi v. Southern New England School of Law</u>, 389 F.3d 5, 12 (1st Cir. 2004), citing <u>In Re Colonial Morg. Bankers</u>, 324 F.3d 12, 16 (1st Cir. 2003).

As relevant here, interpretation of an unambiguous contract is a question of law for this Court. <u>See</u> <u>Nicolaci v. Anapol</u>, 387 F.3d 21, 26 (1st Cir. 2004).[4] It is a fundamental principle of contract interpretation that an unambiguous agreement, such as the Second Amendment, must be interpreted according to its plain terms and "usual and ordinary sense" and without resort to extrinsic evidence. <u>Schwenk v. Auburn Sportsplex, LLC</u>, 483 F.Supp.2d 81, 86 (D.Mass. 2007), citing <u>Suffolk Const. Co., Inc. v. Lanco Scaffolding Co., Inc.</u>, 47 Mass. App. Ct. 726, 729 (1999). <u>See also</u> <u>Nadherny v. Roseland Property Company, Inc.</u>, 390 F.3d 44, 48 (1st Cir. 2004). In this case, the terms of the Second Amendment are unambiguous and, as such, Jenzabar's breach of the terms of that agreement is an absolute bar to the Second Action. Accordingly, and for the reasons set forth in detail below, Jenzabar's Complaint should be dismissed as a matter of law.

---

[4]     The question whether a contract is ambiguous is likewise one of law for a court. <u>Id.</u>

The unambiguous terms of the Tolling Agreement, as amended by the Second Amendment, imposed on Jenzabar two prerequisites to the filing of another lawsuit against Defendants, namely, (1) to provide 15 days notice prior to initiating a second action, and (2) to file that action no later than June 30, 2007.  (Felper Aff., ¶ 6, <u>Ex. 3</u>; Glubke Aff., ¶ 10.) Nevertheless, Plaintiff did not comply with either of these requirements.  As an initial matter, Jenzabar failed to provide timely notice of its intent to file the Second Action, i.e. 15 days before either June 30, 2007 or July 2, 2007.  (Glubke Aff., ¶ 11, <u>Ex. 3</u>; Felper Aff., ¶ 7, <u>Ex. 4</u>.)   In fact, Jenzabar provided Defendants with <u>no</u> prior notice whatsoever of the filing of its Complaint. (<u>Id.</u>)  Instead, Jenzabar waited until June 25, 2007 – five days before the scheduled expiration of the Second Amendment and ten days after Plaintiff was to notify Defendants of its intent to file suit – to even communicate for the first time a <u>request</u> for an extension of the Second Amendment for an additional three months.  (<u>Id.</u>)  In addition, Plaintiff failed to file its Complaint in the Second Action until July 2, 2007 – two days <u>after</u> the specific June 30, 2007 filing deadline proposed by Jenzabar's counsel and agreed to by the parties.  (Glubke Aff.. ¶ 11.) Thus, Plaintiff's breaches of the notice to file and filing deadlines in the Second Amendment bars it from pursuing the Second Action against Defendants.  Accordingly, Plaintiff's Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

In response to this Motion, Plaintiff may attempt to argue that Defendants are somehow estopped from enforcing the deadlines in the Second Amendment by virtue of their two previous assents to extensions of the Tolling Agreement.  This argument must fail for two principal reasons.  First, to permit Plaintiff to proceed with the Second Action on estoppel grounds contravenes the fundamental principle of contract construction that an unambiguous contract, such as the Second Amendment, must be interpreted according to its plain terms and "usual and

ordinary sense." See Schwenk, 483 F.Supp.2d at 86. This is especially so where the Tolling

Agreement, its amendments, and the terms contained therein are produced by a sophisticated

party. See, e.g., Cheschi v. Boston Edison Co., et al, 39 Mass. App. Ct. 133, 141 (1995)

(enforcing indemnification provision negotiated by two "sophisticated business concerns").

Second, Jenzabar cannot use parol evidence, such as Defendants' prior assents to

extensions of the Tolling Agreement, to create ambiguity in the Second Amendment where none

exists.[5] Coll v. PB Diagnostic Systems, Inc., 50 F.3d 1115, 1122 (1st Cir. 1995). However, to

the extent this Court may consider such evidence in adjudicating this Motion, Jenzabar's prior

pattern of contacting Defendants well in advance of the 15 day notice deadline and the filing

deadline to propose the three month extensions directly undercuts any estoppel argument.

Specifically, in the first instance, Plaintiff proposed that the parties enter into the First

Amendment on December 15, 2006, 10 days before the notice to file suit deadline and 25 days

before the Tolling Agreement expired, (Glubke Aff., ¶ 8, Ex. 1; Felper Aff., ¶ 5, Ex. 2); and, in

the second instance, Plaintiff's counsel contacted Defendants on March 12, 2007, three days in

advance of the notice to file suit deadline and 18 days in advance of the actual filing deadline to

provide the required 15 day notice to file suit.[6] (Glubke Aff., ¶ 10, Ex. 2; Felper Aff., ¶ 6, Ex. 2.)

By contrast, Plaintiff did not even propose an extension of the Second Amendment until June 25,

2007, well after the critical 15 day notice to file suit period again included in the Second

Amendment had passed. (Glubke Aff., ¶ 11, Ex. 3; Felper Aff., ¶ 7, Ex. 4.) Thus, in light of

Plaintiff's prior pattern of timely requests to extend the Tolling Agreement and the fact that these

---

[5]     Even assuming, *arguendo*, that the relevant terms of the Second Amendment are ambiguous, which Defendants dispute, they must be construed against Jenzabar, the drafter. See Nadherny, 390 F.3d at 49.

[6]     That Jenzabar was cognizant of the importance of adhering to the deadlines prescribed in the parties' agreements is evidenced by its counsel's communication, in an email dated March 14, 2007, to Defendants' counsel that, "[t]he attached is the 15 day notice per the terms of the tolling agreement. Although I'm operating in good faith that Mike, Dot and Dynamic Campus will agree to the attached extension, I need to protect Jenzabar's rights/ability to move forward with the case if for some reason they don't agree." (Felper Aff., ¶ 6, Ex. 3.)

were terms drafted by Jenzabar, a sophisticated party represented by counsel, any argument Plaintiff may assert based on estoppel or other similar principles of equity fails to rescue it from its inattention to both the 15 day notice to file suit deadline and the June 30, 2007 filing deadline.

Plaintiff may also attempt to argue that – notwithstanding the June 30, 2007 filing date – its Complaint in the instant action was timely filed on July 2, 2007 (a Monday) because the filing date set forth in the Second Amendment was a Saturday – a non-business day. Such an argument also has no legal merit. First, neither the Tolling Agreement nor any of its amendments are documents filed pursuant to the Federal Rules of Civil Procedure or any applicable statute and thereby subject to Fed. R. Civ. P. 6(a) which, in essence, prescribes that any filing deadline which falls on a non-business day is extended to the close of the following business day. <u>See</u> Fed. R. Civ. P. 6(a). Second, the Second Amendment did not contain any provision analogous to that Rule. Indeed, <u>Jenzabar</u> – a sophisticated entity represented by counsel – drafted and provided Defendants with a proposed Second Amendment to the Tolling Agreement in which <u>Jenzabar</u> specifically established the firm and specific filing deadline of June 30, 2007. Defendants agreed to the terms of the Second Amendment as proposed by Jenzabar – including the firm and specific June 30, 2007 filing deadline. As such, this term must be enforced by this Court.[7] <u>See</u> <u>Nadherny</u>, 390 F.3d at 49; <u>Schwenk</u>, 483 F.Supp.2d at 86; <u>Cheschi</u>, 39 Mass. App. Ct. at 141.

---

[7]    Furthermore, to the extent Plaintiff intends to argue that the June 30, 2007 filing deadline should be tolled until July 2, 2007 based on equitable principles, this theory, too fails to rectify Plaintiff's untimely filing. As a general matter, the doctrine of equitable tolling is available under Massachusetts law only if a plaintiff exercising reasonable diligence could not have discovered information essential to pursuing its legal remedies. <u>See</u> <u>Bernier v. Upjohn Co.</u>, 144 F.3d 178, 180 (1st Cir. 1998), citing <u>Protective Life Ins. Co. v. Sullivan</u>, 425 Mass. 615, 631(1997). Here, and ignoring for the moment that Jenzabar had already missed the 15 day notice to file suit deadline, Jenzabar had all of the information necessary in order for it to preserve its right to file a lawsuit against Defendants, namely, the Second Amendment setting forth the filing deadline of June 30, 2007. Having not received Defendants' assent to an extension of the Second Amendment by the last business day before that date, it was clearly incumbent upon Plaintiff to take the necessary action to preserve its right to timely assert claims against Defendants.

## CONCLUSION

For the foregoing reasons, Defendants Dynamic Campus Solutions, Inc. and Michael L. Glubke respectfully request this Court to dismiss Plaintiff's Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

DYNAMIC CAMPUS SOLUTIONS, INC.,
MICHAEL L. GLUBKE and DOROTHY
HESS,

By their attorneys,

/s/ David M. Felper
David M. Felper (BBO # 162460)
Christine S. Collins (BBO # 639293)
Bowditch & Dewey, LLP
311 Main Street, P.O. Box 15156
Worcester, MA 01615-0156
(508) 791-3511
dfelper@bowditch.com
ccollins@bowditch.com

Date:   December 21, 2007

## CERTIFICATE OF SERVICE

I, David M. Felper, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filings (NEF) and paper copies will be sent to any indicated as non-registered participants on December 21, 2007.

/s/ David M. Felper
David M. Felper